# CASES

IN THE

# APPELLATE COURTS OF ILLINOIS.

FOURTH DISTRICT—FEBRUARY TERM, 1880.

## JAMES BANNON
### v.
## JAMES MITCHELL.

1. TRESPASS—RIGHTS OF TENANT—INJURY TO REVERSION.—When an injury is done to premises while a party has a leasehold interest therein, the holder of such interest has a right of action for such portion of the damages as he has sustained, and the owner of the reversionary interest, has also a. right of action for his damages.

2. FLOODING ADJOINING MINES—DAMAGES.—Where the defendant in· mining coal passed over the line of his land upon that of the plaintiff and removed therefrom a quantity of coal left in its natural state as a barrier, and in consequence of such removal, the water from defendant's mine flowed into plaintiff's mine in such quantities as to render further mining of coal impracticable, the plaintiff is entitled to recover substantial damages for the wrongful act of the defendant.

APPEAL from the City Court of Alton; the Hon. HENRY S. BAKER, Judge, presiding. Opinion filed April 2, 1880.

Messrs. WISE & DAVIS, for appellant; that coals or minerals in place are land, cited Barnes v. Mawson, 1 Maule & Selw. 85; Rowe v. Grenfel, R & M. 396; Wilkenson v. Croud, 11 Mees. & W. 33.

The lease to Malloy gave him no title to the coal in the bed; it was only a license to dig, and the title to the coal in bank

remained in the lessor: Johnson Iron Co. v. Cambria Iron Co. 32 Pa St. 241; Funk v. Holdman, 53 Pa. St. 229; Stockbridge Iron Co. v. Hudson Iron Co. 107 Mass. 290; Grub v. Bayard, 2 Wall. Jr. 81; Gillett v. Treganza, 6 Wis. 343; Beatty v. Gregory, 17 Iowa, 109; Grove v. Hodges, 55 Pa. 504; Doe v. Woods, 2 B. & Ad. 719; Marble Co. v. Ripley, 10 Wall. 362.

The owner or landlord may sue for an injury to the reversion: Starr v. Jackson, 11 Mass. 519; French v. Fuller, 23 Pick. 104; Jackson v. Pesked, 1 M. & S. 234; Baxter v. Taylor, 4 B. & Ad. 75; Bower v. Hill, 1 Bing. 558; Little v. Pallister, 3 Green. 6; Austin v. R. R. R. Co. 25 N. Y. 334: Geer v. Fleming, 110 Mass. 39; McConnel v. Kibbe, 33 Ill. 176.

The defendant is liable to the landlord for the damages resulting from his wrongful act: Oldridge v. Sturyvesant, 1 Hall, 210; Lachman v. Deisch, 71 Ill. 59; Goodell v. Lassen, 69 Ill. 145.

Mr. J. H. YAGER, for appellee; that the right of action is in the tenant, cited 1 Washburn on Real Property, 436; 1 Chitty's Pl. 63; Freer v. Stotenbur, 36 Barb. 642; Riddle v. Littlefield, 53 N. H. 510; Taylor's Landlord and Tenant, § 782.

As to what constitutes a license: 2 Washburn on Real Property, 630; Harlan v. Lehigh Coal Co. 33 Pa. St. 292; Van Rensselaer v. Radcliff, 10 Wend. 639.

BAKER, P. J. Bannon, the plaintiff, being the owner of a tract of land containing fourteen and three-fourths acres, and upon which a shaft had been sunk and a coal mine opened, demised and leased said land on the 17th day of April, 1876, to Malloy, for a term of ten years, "for the purpose of mining coal;" said Malloy agreeing to pay during said term the rent of one-half cent per bushel for all the stone coal taken out by him during said term. Malloy covenanted in the lease to deliver up the premises at the end of the term in as good condition as they then were, reasonable use, wear and tear, fire and other casualties excepted. He also covenanted that he would not do, or suffer to be done, any waste in the demised premises.

He took possession and operated the mine until October, 1877. The defendant Mitchell, owned and was operating a coal mine on land adjoining plaintiff's land on the west; and the coal in the two mines was of the same vein and dipped from west to east, and the coal on plaintiff's land was lower than the coal in defendant's mine.

Defendant, in mining, passed over the line of plaintiff's land, and dug and removed a strip of coal under plaintiff's land one hundred and sixteen feet long and nine feet thick at one end, and running to a thickness of seventeen feet at the other end; and thereby connected his mine with the mine on plaintiff's land. Said Malloy had left this strip of coal as a barrier to protect his mine from water from defendant's mine; and had this strip not been cut through by defendant it would have protected the mine from said water. Shortly thereafter defendant abandoned his mine, and large quantities of water accumulated therein, and the barrier being removed, flooded and drowned out the mine on plaintiff's land, so that it could not be operated, and had to be abandoned, and was filled with water from defendant's mine. Malloy fought said water for three months and went to great expense, but without success; and was compelled to abandon the mine and coal. The flooding of plaintiff's mine by water from defendant's mine, could not in any manner have been prevented or guarded against after the cutting through of said strip or barrier by defendant.

Malloy recovered judgment against defendant for $750 damages for the aforesaid expense he was at, and for the coal that had been taken from said strip by defendant; but did not recover in his suit anything by way of damages to the coal in bank in said mine.

No coal has since been mined or taken from the mine on plaintiff's land; it has been wholly impracticable to operate said mine, for the reason that the expense of operating the same would greatly exceed the value of the coal taken therefrom. Had it not been for defendant breaking into and flooding said mine, 400,000 bushels of coal could have been taken out of the same. Said coal was worth in bank at the time said mine was flooded and abandoned, the sum of one-half cent per bushel,

and would still be worth that sum had not said mine been flooded as aforesaid. The foregoing are substantially the material facts in this case, as they are admitted by a demurrer to the evidence.

Malloy took by the lease, a term of ten years in the tract of land, and had a possessory right to the whole premises for that length of time. Moreover, the contract expressly gave him the right and privilege to mine coal during the term out of the mine that had already been sunk and opened on the land, he paying Bannon therefor, half a cent per bushel for all the stone coal taken out by him during the term. He did not bind himself to take out all, or any certain portion of the coal, or to pay for it all, or any fixed portion of it, a half cent per bushel, but only that he would pay for what was dug at that rate. In addition to the possessory right given, the contract was only a license or privilege to dig the coal at a stipulated price. By availing himself of this privilege, and severing the coal from the land he would become a purchaser of it, and acquire the property in the coal so mined and severed from the freehold. Until severed the coal remained a part of the land and freehold of the lessor. The contract, so far as regarded the mining, was executory, and it depended upon his own acts whether he would take any coal, or the lessor part with any. The property in the coal so long as it remained in the bank was still in the lessor, with a possessory right of a term of years, and a contract right to detach the coals during the term, and thereby render them his own property, in the lessee. The lease did not purport to convey the coal or any portion of the free-hold. The tenant, in his suit, very properly recovered for the coals the defendant had actually mined and taken away, for these coals had been detached and severed from the freehold by the act of a stranger, and the tenant might well claim that he, having the possession of the whole premises, and the right of detaching and appropriating the coal as his own property, could take and appropriate the coal after it had been wrongfully severed by the *tort feasor*.

If the tenant had given defendant permission to dig the coal, he would have been bound by his contract himself to pay

the lessor the stipulated price therefor; and so the defendant having dug without such permission, he could step in and take the coals, or recover damages for their conversion, still being bound to pay his lessor such price.   The defendant is liable to respond in damages to the full extent of the injury he has done.   When any injury is done to premises while a party has a leasehold interest therein, the holder of such interest has a right of action for such portion of the damages as he has sustained, and the owner of the reversionary interest has also a right of action for the damage he may sustain.   McConnel v. Kibbe, 33 Ill. 175; Cooper v. Randall, 59 id. 317; I. B. & W. R. R. Co. v. McLaughlin, 77 id. 275; Ripka v. Sergeant, 7 Watts & Serg. 9.   In Biddlesford v. Onslow, 3 Levinz, 209, it was held that both lessor and lessee should sue in respect of trees injured by a stranger, the lessor for the body of the trees, the lessee in respect of the shade and fruit.   Here, the tenant had a mere possessory interest, and no property in the soil, ground, or coal in bank, and no right to the soil or coal in bank beyond an inchoate and executory right to detach such coal from the freehold, and by that act make it his own property.   Appellee relies greatly upon Attersoll v. Stevens, 1 Taunt. 182, and upon some statements in Sedgwick on Damages, Ch. V, which appear to be based upon that case.   The case was decided by the English Court of Common Pleas in 1808, by a divided court; and we prefer the reasoning of Chambre, J., in his dissenting opinion, to the views expressed by the bare majority of the court; we think it more consonant with the decisions of our own courts; and more reasonable and just as allowing each party to recover the damages that belong to himself, and from him who occasioned them.   Such doctrine, also, is not liable to the abuse of allowing opportunity for fraud and collusion between the tenant and tort feasor, whereby the tenant being himself impecunious, a merely nominal or insufficient recovery might be had by him against the trespasser, and the lessor would have but a vain remedy for his wrongs upon the liability by the law imposed on the tenant, or by the tenant assumed by the covenants of his lease, and the result might be, the wrong-doer would go almost or quite scot-free,

although the whole of the substantial injury done by him may have been to the reversionary interest.

In the case cited, Chambre, J., said: " It has been supposed in the course of the discussion in the present case, that where there is an existing tenancy for life or years, so that an action for waste may be brought against the tenant for any injury done to the inheritance, that action is the only remedy the reversioner has, and he can maintain no action against the stranger who in fact commits the waste; but I take the law to be clearly settled otherwise, and that the reversioner may in all cases maintain an action on the case against such stranger, whether the tenancy be at will, for years or life; or he may, if he pleases, waive the penal action of waste, even against the tenant, and bring case against him." In the suit at bar, assuming plaintiff may have had a remedy upon the covenants of the lease against the tenant for the injury done by defendant to the reversion, yet no good reason is perceived why he may not, at his own election, proceed directly against the wrong-doer himself for his damages. It is urged by appellee that the privilege given the tenant by the lease of taking coal was unlimited; and that he had a right to take the coal up to Mitchell's line, and thereby connect the two mines; that water would have flowed into the mine by these lawful acts of the tenant the same as it did by the act of defendant; that the consequence in either case would have been the same; and therefore there was no injury to the reversion of which plaintiff may rightfully complain. We think the premises assumed are unsound. The tenant covenanted to deliver up the premises in good condition, and that he would not do, or suffer to be done, any waste in the demised premises; and he could not lawfully and without committing waste, have removed the strip or barrier of coal in bank that protected the mine of his lessor from being flooded and ruined. We think it evident the damages the tenant recovered in his action, are not the same damages sought to be recovered in this action.

The demurrer to the evidence shows the judgment for $750 was for the expenses the tenant was put to in vainly endeavoring to remove the water from the mine, and for the coal actu-

Bannon v. Mitchell.

ally severed by defendant from the free-hold and taken out of the mine; and that he did not recover in said suit anything by way of damages to the coal in bank in said mine. There is nothing to indicate the damages here proceeded for were in any way involved in the action prosecuted by the tenant; and the defendant can take nothing by his plea of former recovery. Some question is made upon the plaintiff's pleadings. The first count of the declaration, after alleging tortious act of the defendant, concludes: "Plaintiff avers that the water, in consequence of the drain or dip of the mines, as aforesaid, immediately commenced running from defendant's mine in large quantities upon plaintiff's land and into his mine, and has so continued ever since; that in consequence thereof said Malloy has been completely prevented from digging the coal out of said land, said mine has been drowned out and rendered completely worthless; that on account of such water running into plaintiff's said mine and land, the mine is constantly full of water and cannot be worked, and the coal cannot be taken or mined from said land and all is lost, and plaintiff's land and coal is destroyed; and he loses all the rents he would have received from said coal; to plaintiff's damage $10,000." The second count concludes by alleging "that in consequence of drowning out said mine he has lost all the coal under his land; that it is impossible to have the same dug out, and plaintiff has lost large rents; to his damage $10,000." We see no substantial variance between the injury and damage stated in the declaration and that shown by the evidence; and we do not regard the point made on the replication as substantial, or one of which advantage can be taken on this demurrer to evidence.

It is conceded that in actions of this character, it must be distinctly averred in the declaration that the act complained of, has been done to the damage of the reversion, or else an injury must be stated of such nature as is necessarily injurious to the reversion. It may also be conceded, appellant cannot maintain an action for the rents or royalty, for the reason it was by the terms of the lease optional with the tenant, whether he would take any coals out or not, and it was uncertain

whether, in any event, plaintiff would have got this rent or royalty. But this particular statement of damages, may be rejected as surplusage. This leaves the plaintiff the allegations, "the land and coal is destroyed," and that "he has lost all the coal under his land." These show a substantial injury to the reversion; for we have seen that under the contract, the property in the coal in bank did not pass to the tenant; and that such property only passed upon severance from the free-hold; and, as there never has been a severance of this coal in bank, it always has been, and still is a part and parcel of the land and reversionary interest of the lessor. If a building in possession of a tenant is destroyed by a trespasser, the landlord as reversioner, has for his damages the difference between the value of the property immediately before the harm was done, and its value in the condition produced by the injury. In this case it is claimed the coal is lost and destroyed; and the demurrer admits the mine cannot be operated, and had to be abandoned, and is filled with water, and that this water cannot in any manner be stopped or controlled, and could not in any manner have been prevented or guarded against after the removal of the strip or barrier of coal; and that it has continuously been wholly impracticable to operate the mine, for the reason that the expenses of operating the same would greatly exceed the value of coal mined therefrom. The demurrer further admits said coal was worth in bank at the time said mine was so flooded and abandoned, the sum of a half cent per bushel, and would still be worth that sum, had not said mine been flooded; and that if it had not been for defendant's breaking into, and flooding said mine, 400,000 bushels of coal could have been taken out of it. We think that for all practical purposes, this shows a substantial loss and destruction of the coal. It will not do to urge that the coal is still there, just as good and just as much of it as there was at the time of the injury complained of. If the coal is so flooded with water that it is impracticable to take it out because the expenses of so doing would greatly exceed its value when taken out, then it now, in the condition in which the act of defendant has placed it, has no appreciable value, the value it had has been destroyed and lost,

and the reversioner's interest in the land is thereby of less value. It is uncertain the coal ever will have any value, or give any additional value to the land; it is mere matter of speculation. If the coal had been mined and loaded on boats, and those boats were sunk in the river, or ocean, and so sunk that the cost of raising the coal would greatly exceed its value when raised, it would be idle to say the coal was not lost or destroyed, but was just as good and just as much of it as ever.

We are of the opinion the plaintiff has a right of action against the defendant for the injury sustained by him, and a right to recover substantial damages. The court below was right in overruling the demurrer to the evidence; but erred in rendering judgment for only nominal damages and costs. As the demurrer was probably taken upon a mistaken view of the law, and possibly admits a larger measure of damages than the facts and justice of the case would warrant, we refrain from entering final judgment upon the demurrer in this court. The judgment is reversed and the cause remanded.

Reversed and remanded.