## Kellyville Coal Company et al. v. John O'Connell.

1. VARIANCE—*when objection for, comes too late.* A variance cannot be first pointed out on appeal. In order to raise for review a question of variance, it must be specifically pointed out in the trial court.

2. INJURIES TO REAL PROPERTY—*in whom cause of action lies where coal mine is flooded.* Where a mine is operated by a tenant with no obligation on his part to take out all or any certain amount of the coal, and his estate therein is of an uncertain and indefinite character, and the coal is necessarily abandoned or lost,

or the mine cannot be reclaimed, the right of action for substantial damages is in the lessor or owner of the freehold, and the tenant can only recover the amount of expenses incurred by him and the value of the severed coal and personal property lost by him.

3. DOCTRINE OF ESTOPPEL—*when does not apply in conduct of trial.* A statement of counsel is not binding and does not operate as an estoppel where neither the court nor the counsel for the opposite party was misled by such statement.

4. INSTRUCTION—*when, upon right of recovery, improper.* An instruction upon the right of recovery is improper where it omits a necessary element to entitle a recovery.

Action for damages to real property. Appeal from the Circuit Court of Vermilion county; the Hon. MORTON W. THOMPSON, Judge, presiding. Heard in this court at the May term, 1906. Reversed and remanded. Opinion filed June 1, 1907.

J. B. MANN and H. M. STEELY, for appellants.

REARICK & MEEKS, for appellee.

MR. JUSTICE BAUME delivered the opinion of the court.

Appellee, John O'Connell, brought his action on the case against appellants, the Kellyville Coal Co. and the Chicago & Eastern Illinois R. R. Co., to recover damages occasioned by the alleged negligence of appellants, whereby a coal mine operated by appellee was flooded. There was a verdict and judgment against appellants for $7,000.

The declaration consists of two counts. The first count alleges that appellee owned and was in possession of a certain coal mine, and the second or additional count alleges that appellee was in possession of and operating said coal mine. Each count of the declaration further alleges that appellee was mining the coal underlying certain described lands in section 32 lying east of Grape creek; that appellant, the Kellyville Coal Co., operated a coal mine known as Kelly's No. 5, situate north and west of the main track of the Chicago & Eastern Illinois Railroad, and that by an arrangement entered into between said coal company

and said railroad company, and for the mutual advantage of both, a switch was constructed leading from the main line of said railroad just west of appellee's coal shaft up to said mine Kelly's No. 5, a half mile north, and that at a point 150 yards south of the coal shaft of said Kelly's No. 5 said switch crossed the channel of Grape creek; that Grape creek is a natural watercourse, and that appellants constructed a bridge across said creek, consisting of five rows of bents or piling placed in such way that the bents were not in the same line as the flow of the water, but acted as an obstruction to the flow; that the bridge was so carelessly and negligently constructed that by reason thereof the waters were obstructed and diverted from their natural channel down said creek, to the lands lying east of the switch, and that in constructing said switch a channel had been dug along the east side of the railroad grade to the south of said creek, which caused the waters to turn in said channel and flow south over the lands underlying which appellee's mine was situated, where there were two sunken places or depressions in the ground where the roof of the mine had caved in, and negligently permitted the said bridge and said channel to so remain; that on March 25, 1904, the waters flowing down Grape creek became dammed up and obstructed by the bents of said bridge, and were conveyed down the channel along the east side of the railroad grade into the said sink holes or depressions, and were thereby let into the mine of appellee, and continued to flow through said sink holes into the said mine until the same was entirely flooded and filled with water. Said counts of the declaration further allege that by contract appellee had the right to remove all the coal under said lands upon the payment of a royalty of five cents per ton, and that by reason of the flooding thereof the said mine was depreciated in its market value and rendered less valuable; that in order to remove said water, appellee was compelled to and did expend divers large sums of

money amounting to $10,000 and that by reason of said flooding twenty-five coal cars, twenty tons of steel rails, 500 ties, 4,000 pounds of iron pipe and a large quantity of timbers were lost to appellee. The second count of the declaration further alleges that by reason of the flooding appellee lost the services of divers employes and the services of his mules and horses, and was put to great expense in feeding and taking care of his horses and mules until such time as the mine was again put in condition.

The mine in question, operated by appellee at the time of its flooding, is known as the Bluebird mine, and the right of appellee to mine coal therein accrued by virtue of two certain leases covering different tracts of land. One of said leases expired January 1, 1903, and the other terminated April 1, 1901. Appellee, therefore, on March 25, 1904, was operating said mine merely as a tenant at will or by sufferance, or as a licensee under an alleged parol license after the termination of the leases "to go ahead and take out the coal."

It is insisted that the peremptory instructions tendered on behalf of each of the appellants at the close of the evidence for appellee and again at the close of all the evidence, should have been given to the jury, and this insistence is predicated upon the contention that there was a material variance between the averments of the declaration and the proof respecting the location of the east sink hole with reference to the mine operated by appellee, and the description of the lands under which a portion of the mine was located.

No objection was made to the evidence by appellants in the court below, upon the ground of an alleged variance, nor was any alleged variance between the proofs and the allegations of the declaration pointed out by counsel for appellants. In the absence of such objection in the trial court accompanied by a specific showing as to wherein the alleged variance consisted, so that the same might have been obviated by amendment, the peremptory instructions asked by the appel-

lants were properly refused, and the propriety of the action of the trial court in that regard is not open to review by this court. Chicago City Ry. Co. v. Carroll, 206 Ill. 318; Alton Railway Co. v. Webb, 219 Ill. 563.

The evidence tends to show that the construction of the grade for the switch track leading from the main track of the Chicago & Eastern Illinois Railroad to the mine known as Kelly's No. 5, was contracted and paid for by the Kellyville Coal Company, and that the Kellyville Coal Company also paid for the construction of the bridge across Grape creek and hauled the necessary timbers therefor, but the evidence further tends to show that engineers in the employ of the C. & E. I. R. R. Co. set the stakes for and indicated the height of the grade, and planned the bridge across Grape creek, and that said bridge was constructed and the necessary ties and rails thereon and upon the grade of the switch track were laid by employes of the C. & E. I. R. R. Co. The evidence further tends to show that after the construction of the switch track from its main track to Kelly's No. 5, the C. & E. I. R. R. Co. operated its engines and cars thereon, and that after the grade was washed out by the flood of March 25, 1904, it was repaired by the employes of said railroad company.

If the bridge across Grape creek was so negligently constructed as to obstruct the natural flow of the water in said creek, and such negligent construction of said bridge, was the proximate cause of the flooding of appellee's mine, and appellee was not, himself, guilty of contributory negligence, we have no doubt but that both of the appellants may be held jointly liable to respond in damages for the resulting injury. These were, upon the evidence in this respect, questions of fact to be solved by the jury.

The evidence tends to show that the water that overflowed the channel of Grape creek and entered the east sink hole flowed first into the workings of the

Commissary mine, thence into the workings of the Brookside mine and thence into appellee's mine, and it is insisted that appellee was guilty of contributory negligence in permitting underground connections to exist between these several mines. The Commissary and Brookside mines seem to have been worked out and abandoned prior to March 25, 1904, and it does not appear that appellee was in anywise responsible for the openings between those mines. Neither does it appear that appellee was responsible for the opening between the underground workings of his mine and the Brookside mine. There is evidence tending to show, however, that the opening between the Brookside mine and appellee's mine had been closed up with brick and cement by appellee.

It is also urged that appellee was guilty of contributory negligence in having failed to fill up the sink holes or depressions through which the water entered his mine. There is evidence tending to show that appellee caused the west sink hole to be at least partially filled up and that he constructed a dam on the upper side of such sink hole to prevent the waters of the creek, in the event of an overflow of its banks, from entering such sink hole.

Upon the trial appellee was permitted to introduce evidence tending to show that by reason of the flooding of the mine he had been obliged to abandon a portion of it; that he thus lost the profits which would accrue to him by mining a certain quantity of coal in the mine; and also appellee was permitted to show as his measure of damages, the difference in the market value of the mine before and after the flooding. The evidence might have been competent if appellee had had such a fixed tenure of the property as would have enabled him to mine the coal in the abandoned portions of the mine, or would have given to his leasehold an appreciable value, but in the case at bar, appellee, as has been said, being merely a tenant at sufferance or a licensee under a parol license, and sub-

ject at any time to be ousted, or have his license revoked, the evidence was incompetent, as tending to establish damages purely speculative and conjectural, and too remote to be admeasured.

Where a mine is operated by a tenant with no obligation on his part to take out all or any certain amount of the coal and his estate therein is of an uncertain or indefinite character, and the coal is necessarily abandoned or lost, or the mine cannot be reclaimed, the right of action for substantial damages is in the lessor or owner of the freehold, and the tenant can only recover the amount of expenses incurred by him and the value of the severed coal and personal property lost by him. Bannon v. Mitchell, 6 Ill. App. 17.

It is urged by appellee that appellants are estopped from questioning the propriety of the action of the court in admitting the evidence referred to and in giving an instruction authorizing the jury to assess damages based upon such evidence, by a certain statement made by counsel for appellants during the trial. relative to the true measure of damages in a case where a tenant had been dispossessed. Counsel for appellants then stated an abstract proposition of law, as he conceived it, and suggested that it might be applicable to the case at bar, but the court expressly disagreed with counsel and refused to entertain his suggestion. Neither the court nor counsel for appellee was misled by the statement of counsel for appellants, and, therefore, the reason for the application of the doctrine of estoppel given in the cases cited by appellee does not exist in the case at bar.

The fourth instruction given at the instance of appellee contains a recital of facts, proof of which are declared to entitle appellee to a verdict, and omits the requisite element of the exercise of due care by appellee for the protection of his mine from flooding. The third instruction offered by appellee and given to the jury as modified by the court is subject to the same criticism.

The fifth instruction given at the request of appellee is in conflict with the directions given to the jury by the twelfth instruction given at the instance of appellants. Such fifth instruction informed the jury that if the sink hole on the west side of the switch was on the land of other parties it would be no defense in the case that appellee might have filled it up; that if appellant, the Kellyville Coal Co., was guilty of the negligence alleged in the declaration it could not require appellee to go upon its lands, or the lands of another, to do something to avoid the effects, if any, of the negligence of appellants, if any.

By the twelfth instruction referred to, the jury were directed that if they believed from the evidence that the sink holes were known by appellee to exist and he had reason to apprehend that his mine might be flooded by means of said sink holes, and that he had neglected to fill up the same, and that such filling up of the sink holes would have prevented the flooding of his mine, and if they further believed from the evidence that the failure of appellee to fill up said sink holes was negligence, and that such negligence contributed to the loss and damage sustained by appellee, he could not recover therefor.

The west sink hole was on the surface of the ground overlying appellee's mine, and it was incumbent upon him to so operate his mine as to do no injury to the surface, and for the purpose of repairing any injury done, he was undoubtedly authorized to go upon the surface. There is evidence tending to show that appellee had been warned by the president of the Kellyville Coal Co., the owner of the land, as to possible danger from a flood and had been directed to fill up the west sink hole, and appellee testifies that he had filled it up, and that he had also constructed a dam on the surface of the ground north of the sink hole. Unquestionably, appellee did not doubt his right to go upon the surface of the land for the purpose of preventing the flooding of his mine.

Kellyville Coal Co. v. O'Connell.

The east sink hole was on land overlying the Commissary mine, and there is evidence tending to show that appellee did not know of its existence, or that water entering such sink hole might or could reach the workings in his mine.

By the sixth instruction given at the request of appellee the jury were told that the measure of damages was the difference, if any, in the market value of the mine considering it as it stood immediately before and immediately after the flooding, and by the seventh instruction the jury were authorized to allow appellee as damages such sums of money, if any, as he reasonably expended in putting the mine in substantially as good condition for mining coal as it was before the flooding occurred. By these instructions the jury were, undoubtedly, authorized in the event that appellants were found guilty, to award damages to appellee based upon a consideration of the elements mentioned in both instructions. For the reasons heretofore stated in the discussion of the admissibility of evidence relative to the difference in the market value of the mine, the sixth instruction should have been refused.

Our view of the proper measure of damages in this case is succinctly expressed in the sixth instruction tendered by appellants and refused by the court.

The fifth instruction offered by appellants and refused by the court is not an accurate statement of what constitutes an act of God and was properly refused.

The other questions raised by appellants we do not regard as of sufficient importance to warrant further discussion. For the reasons indicated the judgment is reversed and the cause remanded.

*Reversed and remanded.*