# THE CHICAGO CITY RAILWAY COMPANY

*v.*

## ROBERT CARROLL.

*Opinion filed December 16, 1903.*

1. CARRIERS—*when introduction of street car transfer is not essential to establish the relation of passenger.* The introduction in evidence of plaintiff's street car transfer is not essential to the establishment of his relation as a passenger on defendant's car line, where the undisputed evidence tends to show that he received a transfer, which was in his pocket when he was brought home after the injury.

2. SAME—*when the plaintiff need not prove cause of accident.* In an action against a street car company by a passenger for injuries received from the falling of a trolley pole from a car, it is not essential to a *prima facie* case that the plaintiff show what caused the pole to fall or that the car was negligently operated or defectively constructed.

3. EVIDENCE—*what sufficient to sustain general charge of negligence.* Proof that plaintiff, while alighting from defendant's car at a transfer point to continue his journey, was hit on the head by the trolley pole as it fell from the car, is sufficient to cast upon the defendant the burden of rebutting the general charges of negligence contained in the several counts of the declaration.

4. SAME—*physician may be asked by whom he was paid.* A physician introduced by the defendant in a personal injury case as a witness upon the question of damages may be asked, on cross-examination, by whom he was sent to examine plaintiff's injuries and by whom he was paid.

5. SAME—*when evidence as to wages is properly admitted.* Evidence as to the wages and earnings of the plaintiff previous to the time of his injury is properly admitted, even though there is no allegation in the declaration of any particular trade or profession or that plaintiff lost any specific wages or earnings.

6. TRIAL—*time for admitting evidence is discretionary with trial court.* It is within the discretion of the trial court to admit, at any stage of the case, evidence which has been overlooked, and its action will be upheld, on review, unless such discretion has been abused and injury is shown to have resulted therefrom.

7. SAME—*what does not amount to an offer of evidence.* A conversation between counsel and the court, to the effect that counsel desired to offer evidence upon a certain question, which the court declined to receive, does not amount to an offer of evidence and a refusal to admit it, upon which an assignment of error can be based.

8. SAME—*party must object and except to improper remarks of trial judge.* In order to base an assignment of error upon alleged im-

proper remarks by the court, it must appear from the record that objections were made and exceptions taken at the time.

9. INSTRUCTIONS—*instruction precluding recovery for variance must point out the variance.* An instruction denying the plaintiff's right of recovery, if offered upon the theory that there was a variance between the allegations and the proof, should point out the alleged variance, so as to give an opportunity to obviate it by amendment.

10. SAME—*when error in refusing instructions will not reverse.* Error in refusing instructions denying plaintiff's right of recovery upon certain counts of the declaration which are not supported by the evidence is not ground for reversal, where there are other good counts which the evidence tends to prove and all the counts are for the same injury.

11. SAME—*when instruction is unobjectionable.* An instruction informing the jury that if the plaintiff had proved his cause of action as alleged in the declaration he was entitled to a verdict, is unobjectionable.

12. SAME—*when it is not error to assume fact in instruction.* It is not error for the court to assume, in an instruction, that which is established on one side and is not denied on the other.

13. SAME—*when instruction may include prospective suffering as an element of damage.* If the declaration alleges permanent injury, it is not error to instruct the jury to compensate the plaintiff not only for what he has suffered but for what he will suffer.

*Chicago City Ry. Co.* v. *Carroll,* 102 Ill. App. 202, affirmed.

APPEAL from the Branch Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. JOSEPH E. GARY, Judge, presiding.

This is an appeal from the Appellate Court for the First District from a judgment obtained by Robert Carroll against the Chicago City Railway Company. The original judgment in the superior court was for the sum of $5000. The Appellate Court required a *remittitur* of $2000, and judgment was entered for the sum of $3000.

The declaration consisted of six counts. Each of said counts alleged that defendant was possessed of, owning and operating a street railway and electric street cars thereon, the electricity for which was supplied from the wire overhead, through and upon an iron trolley-pole

attached to the top of the car. Each count contained averments of due care and caution. The first count alleges, also, that plaintiff was at or near the intersection of Wentworth avenue and Thirty-fifth street, and, without alleging any duty, avers that the defendant, by its servants, so carelessly and negligently propelled and managed its car and trolley-pole that the pole broke away from said car, fell and hit plaintiff upon the head. The second count avers defendant also owned and operated tracks and trolley wires on Thirty-fifth street, and that it was defendant's duty, when crossing said street, to manage and control the trolley-pole on the Wentworth avenue car by a rope attached thereto, so that it should not be caught in the intersecting wires; that while the plaintiff was walking along Wentworth avenue, at or near the intersection of Thirty-fifth street, defendant, by its servants, so carelessly and negligently managed and operated said car and trolley-pole that the upper end thereof was not held in control and became caught and entangled in said wires, and was thereby torn off the roof of said car, fell, etc. The third count alleges that the trolley-pole was connected to the car by a turn-table attached or screwed to the car by a bolt, and that it was defendant's duty to provide strong and sufficient bolts; that the pole and turn-table were attached by an insufficient and defective bolt; that while plaintiff was walking along Wentworth avenue, at or near its intersection with Thirty-fifth street, said pole fell by reason of said defective bolt. The fourth count alleges that it was defendant's duty to regularly inspect the pole and turn-table and see that the bolts and screws were in good order and repair; that defendant permitted said bolts and screws by which the turn-table and pole were attached to the car to become worn out, rusty and out of repair, and that while plaintiff was walking along Wentworth avenue, at or near the intersection of Thirty-fifth street, the trolley-pole fell by reason of the defective

bolt, as aforesaid.   The fifth count charges that defendant operated both the Thirty-fifth street and Wentworth avenue lines, and that passengers were entitled for one fare to a continuous ride on both streets and were given transfer slips entitling them to change cars at Thirty-fifth street; that plaintiff was a passenger upon a Wentworth avenue car, paid his fare and received a transfer slip; that he left the Wentworth avenue car at or near the intersection with Thirty-fifth street to continue his journey upon a Thirty-fifth street car, and while he was walking to said car, defendant so carelessly and negligently managed and operated the Wentworth avenue car and trolley-pole attached thereto that said trolley-pole fell, etc.   The sixth count differs from the fifth count in the negligence averred, which is, that defendant, by its servants, carelessly and negligently permitted plaintiff to be hit upon the head by said trolley-pole.   The general issue, only, was filed.

The only error relied upon is, that the Appellate Court erred in affirming the judgment of the superior court and in not reversing the same, and, based upon this assignment, appellant argues and insists upon error in the court's refusal to direct a verdict for appellant and in failing to direct the jury that appellee could not recover under the various counts of the declaration; the giving and refusal of instructions; the admission and rejection of evidence, and alleged improper remarks by the court.

WILLIAM J. HYNES, and SAMUEL S. PAGE, (MASON B. STARRING, of counsel,) for appellant.

STEERE & FURBER, for appellee.

Mr. JUSTICE RICKS delivered the opinion of the court:

At the close of all the evidence appellant made a motion and offered an instruction to have a verdict directed for it.   The court denied the motion and refused the instruction, and for that, error is assigned.   If there was

evidence in the record fairly tending to support the aver-ments of the declaration, or any count of it, that instruc-tion was properly refused.

As to the manner in which and the circumstances un-der which appellee received his injuries no evidence was offered except by appellee. Appellant has no evidence in the record and examined no witness on any branch of the case except as to the measure of damages, so that whatever evidence there is in the record tending to es-tablish appellee's case is uncontradicted and undisputed. The undisputed evidence shows that appellee, on the 28th day of January, 1899, between ten and eleven o'clock A. M., entered one of appellant's electric cars, which was operated by a trolley, at Sixty-third street and Went-worth avenue, to make a journey over its line thence to Thirty-fifth street, where appellant had a line running east and west along the latter street, which appellee was to take to carry him west to Parnell avenue, where he resided; that appellee paid his fare and received a transfer for the Thirty-fifth street line; that when Thirty-fifth street was reached, and as appellee was alighting from, or just as he had alighted from, the Wentworth avenue car to go to the Thirty-fifth street car, at the junction of these two streets, the trolley-pole from the Wentworth avenue car from which appellee had just alighted or was alighting, fell from that car and struck appellee upon the head and knocked him down, and whatever injuries he did suffer resulted therefrom. Ap-pellee was picked up in a dazed condition and carried to a store near the car line and taken thence home in an ambulance.

Appellee testified that he had a transfer, and his son testified that when he was brought home a transfer was taken out of his pocket. No witness denied that he had a transfer or that he received it in the regular way. It is now urged that because a transfer paper itself was not offered in evidence and is not in the record, that is

fatal to appellee's case. We do not think so. The action was not upon the transfer paper. It was a mere incident to appellee's right. It was sufficient that the undisputed evidence showed, or tended to show, that appellee did receive a transfer, and in consequence of that, and by virtue of it, was a passenger on both lines of appellant while making a continuous journey to his destination. *North Chicago Street Railroad Co.* v. *Kaspers*, 186 Ill. 246. ·

It is further said by appellant that there is nothing to show what caused the trolley-pole to fall, or to show that the car was run in a negligent manner with regard to speed, or defectively or wrongly constructed. It was not necessary for appellee to show these matters. As early as 1854, in the case of *Galena and Chicago Union Railroad Co.* v. *Yarwood*, 15 Ill. 468, this rule was announced (p. 471): "By the law they [railroads] are bound to the utmost diligence and care, and are liable for slight negligence. Proof that defendant [appellee] was a passenger, the accident, and the injury, make a *prima facie* case of negligence. This is done, and the burden of explaining is thrown upon the plaintiffs" [appellants]. The rule above quoted has, from the time of its announcement to the present time, been adhered to by an unbroken line of decisions in this State. It is the general recognized rule of this country, and is one application of the rule *res ipsa loquitur.* (3 Thompson on Negligence, sec. 2754; 2 Wharton on Negligence, sec. 661; *Galena and Chicago Union Railroad Co.* v. *Yarwood*, 17 Ill. 509; *Pittsburg, Cincinnati and St. Louis Railway Co.* v. *Thompson*, 56 id. 138; *Peoria, Pekin and Jacksonville Railroad Co.* v. *Reynolds*, 88 id. 418; *Eagle Packet Co.* v. *Defries*, 94 id. 598; *North Chicago Street Railway Co.* v. *Cotton*, 140 id. 486.) The rule as announced by Mr. Thompson in his work on Negligence, *supra*, is: "The general rule may be said to be, that where an injury happens to the passenger in consequence of the breaking or failure of the vehicle, roadway or other appliance owned or controlled by the carrier and used by him in

making the transit, or in consequence of the act, omission or mistake of his servants, the person entitled to sue for the injury makes out a *prima facie* case for damages against the carrier by proving the contract of carriage, that the accident happened in consequence of such breaking or failure, or such act, omission or mistake of his servants, and that in consequence of the accident the plaintiff sustained damage." In *North Chicago Street Railway Co.* v. *Cotton, supra,* this court said (p. 494): "The general rule seems to be, that proof of an injury occurring as the proximate result of an act which, under ordinary circumstances, would not, if done with due care, have injured any one, is enough to make out a presumption of negligence. And this is held to be the rule even where no special relation, like that of passenger and carrier, exists between the parties." In that case the further language is used (p. 493): "The evidence of the injury to the plaintiff, and the circumstances under which it was inflicted, were, alone, sufficient to raise a presumption of negligence on the part of the defendant, and as no evidence was offered to rebut that presumption, a verdict in favor of the plaintiff necessarily followed, wholly regardless of the evidence objected to."

Appellant contends that as certain counts in the declaration alleged that the car was not properly inspected, and that other counts alleged that the bolts and connections of the trolley-pole were rusty and worn, these were specific charges of negligence and there was no proof in the record to support them. Appellant, in its argument, seems to overlook the fact that the declaration contained six counts, and that in at least three of them there was no specific negligence charged. But if its contention was sound, as we think it is not, as applied to the counts charging specific negligence, it could not be applied to the counts charging general negligence. Touching this same objection, which was made in the *Cotton case, supra,* this court said (p. 495): "But it seems to be contended

that, even admitting that a presumption of negligence
arises from mere proof of the plaintiff's injury and its
cause, it does not follow that there is any presumption
of the specific negligence alleged in the declaration.
Even if it be admitted that the presumption is one of
negligence generally, and not of any specific negligence,
we think it sufficient to throw upon the defendant the
burden of rebutting the specific negligence alleged. But
the circumstances of the injury do, in our opinion, give
presumptive evidence of at least the specific negligence
charged in the first count of the declaration. That charge,
as we have seen, is very general, and consists of negli-
gently running and operating its road and the cars pro-
pelled thereon." The first count of the declaration charges
that appellant "so carelessly and negligently propelled
and managed said car and trolley-pole that said trolley-
pole broke away from said car and fell and hit plaintiff
upon the head." The fifth count charges that appellant
"so carelessly and negligently managed and operated
said Wentworth avenue car, and trolley-pole attached
thereto, that said trolley-pole fell and hit plaintiff upon
the head." The sixth or additional count charges that
appellant "carelessly permitted plaintiff to be hit upon
the head by said trolley-pole." Applying the rule as
announced in the above case, and as we think it is gen-
erally recognized, there can be no doubt but that the
evidence in behalf of appellee was sufficient to cast upon
appellant the burden of rebutting the negligence alleged
in these counts.

Appellant says that even if it be conceded that the
rule *res ipsa* applies, the instruction should have been
given, because there was no evidence in the record show-
ing that appellant owned, operated or controlled the
electric car lines in question. There was evidence in the
record tending to show that appellant did operate and
own the lines in question. Appellee's son testified that
the cars running upon the Wentworth avenue line bore

the inscription, "The Chicago City Railway." Dr. Babcock, a witness for appellant, testified that on the same day that appellee was injured, and very shortly after the injury, he was directed by appellant to go and make an examination of appellee and was paid by the appellant for that service. Dr. Moyer, another witness for appellant, testified that he examined appellee on the morning of February 3, 1899, and that he was sent by the appellant to make the examination and appellant paid for it. Dr. John Leeming testified that he examined appellee on August 4, 1899; that he was sent by appellant to make the examination and was paid by it for so doing. (*Consolidated Coal Co.* v. *Bruce*, 150 Ill. 449.) Every count in the declaration averred that appellant was possessed of, owned and operated said electric railroad.

In *McNulta* v. *Lockridge*, 137 Ill. 270, it was said that the plea of the general issue did not traverse the allegation that the defendant was possessed of and operated a railroad, and appellee invokes this case as authority for the position that it was unnecessary for him to make any proof of that allegation until it was denied. As there was evidence in the record tending to show ownership and operation of this railroad by appellant, the case does not need to be disposed of upon the theory of the presumption arising from the pleadings. The case does not present that question squarely, and we do not now feel called upon to determine just what construction shall be placed upon the language of the court in the *Lockridge case.* We are clear, however, that where the matter is not made an issue and is but inducement to the general charge of negligence averred, slight evidence will be sufficient, uncontradicted, to support the allegation.

Appellant, at the close of all the evidence, also offered six instructions asking the court to hold that appellee could not recover under the respective counts of his declaration. The ground of the contention is not stated in the instructions offered, and if it were upon

the theory that there was a variance between the declaration and the evidence, the instruction should have been denied for the failure to point out wherein there was a variance, so that it might be obviated by proper amendment. (*Chicago, Rock Island and Pacific Railway Co.* v. *Clough,* 134 Ill. 586.) The theory of appellant as to these instructions seems to be, that there was no evidence, or not sufficient evidence, to support any count in the declaration. From what we have already said it is quite clear that as to at least three counts the instructions were properly refused, and though there may have been counts that there was no proof to sustain, they were all for the same injury, and any one good count would have been sufficient to support a verdict and judgment. It has not been, and cannot well be, as we think, pointed out, how appellant could be injured by the refusal of these instructions as to particular counts when other counts must have been permitted to stand to evidence applying to them, and we would not reverse the case for such error if it existed.

It is urged that it was error, on cross-examination, to ask the doctors introduced by appellant by whom they were sent and paid. We do not think so. It is always competent, on cross-examination, to ask a witness if he is in the employ of a party, or if at the time he rendered the particular service he was in the employ of such party, for the purpose of showing his relation to the case and his interest in it, as affecting his credibility and weight of his evidence. It being proper to ask the question and the evidence being properly in the record, it could be considered on any proposition it tended to establish.

It is also complained that appellee had closed his case and appellant had offered its evidence when appellee was allowed to re-call his son, John, and show by him the name or the inscription on the cars on appellant's line. This was not error. It is in the discretion of the trial court to allow evidence that has been over-

looked or omitted, at any stage of the case, and unless that discretion has been abused or injury is shown to have resulted from it, it cannot be said to be error. When this son of appellee was re-called and allowed to testify relative to the name appearing on the cars, the court informed appellant that if it so desired he would hear evidence on its part in denial of what the evidence thus allowed tended to show, but appellant offered no such evidence.

When this witness retired from the stand, appellee announced that he rested his case. Appellant's attorney then said: "We desire to offer evidence, your honor, on the question of inspection of the cars, and so forth." The court replied: "Very well; I won't receive any evidence except as to the ownership of this line at this stage." Exception was taken, and it is now urged that, inasmuch as appellee was allowed to show the inscription on the cars, it tended to show ownership, and that appellant should have been allowed to show that it did inspect its cars; that in the absence of proof of ownership appellant was not required to prove anything, and that as there was no evidence, until the testimony of this son, of ownership, the court should have opened the case and allowed proof upon the question of inspection. It may first be said, there was evidence of ownership and operation of the car by appellant already in the record, and it would be a dangerous rule of practice to sustain error upon an assignment such as this. Appellant, in fact, offered no evidence upon the matter. No witness was put upon the stand; no question was asked. Nothing was done except a mere conversation or talk had between counsel for appellant and the court. Such procedure as that does not amount to an offer of evidence, and the remarks of the court did not amount to a refusal to admit evidence. There can be no refusal to admit that which has not been offered, and counsel cannot, by engaging in a mere conversation with the court, although it may

relate to the procedure, by merely stating what he desires to do, get a ruling from the court upon which he can predicate error. If appellant desired to make the contention it now makes, it should have at least put a witness upon the stand and proceeded far enough that the question relative to the point it is now said it was desired to offer evidence upon was reached, and then put the question and allow the court to rule upon it, and then offer what was expected to be proved by the witness, if he was not allowed to answer the question asked. It was not stated to the court that appellant did inspect the cars or could prove that the cars had been regularly inspected or recently inspected, or that the inspection that was made was an examination of the trolley-pole or its attachments, and to now hold that the case should be reversed upon the mere statement of counsel that he desired to offer evidence upon the question of the "inspection of the cars, and so forth," would, as we think, be setting a dangerous precedent, and one that would tend to irregularity in such matters. *Stevens* v. *Newman*, 68 Ill. App. 549; *Beard* v. *Lofton*, 102 Ind. 408; *Morris* v. *Morris*, 119 id. 341; *Ralston* v. *Moore*, 105 id. 243; *Smith* v. *Gorham*, 119 id. 436; *City of Evansville* v. *Thacker*, 2 Ind. App. 370; *Darnell* v. *Sallee*, 7 id. 581; *First Nat. Bank* v. *Stanley*, 4 id. 213; *Lewis* v. *State*, id. 504; *Huggins* v. *Hughes*, 11 id. 465; 8 Ency. of Pl. & Pr. 236.

Other matters are urged by appellant with reference to the admission and exclusion of evidence, which relate particularly to the examination of the medical witnesses and experts. The objections grow chiefly out of hypothetical questions propounded to witnesses relative to the condition of appellee. The questions are long and the objection highly technical. We have examined the questions in the light of appellant's argument, and think there was no material error in the ruling of the court in regard to them. One of the matters of evidence objected to is, that appellee was allowed to testify as to his wages

and earnings previous to the time of the injury, while
there is no allegation in the declaration, or any count
thereof, that appellee lost any specific wages or earnings
and no allegation of any particular trade or profession.
The evidence was that appellee was a carpenter and con-
tractor and in relation to the wages he received in such
lines of business. In *Chicago and Erie Railroad Co.* v. *Meech,*
163 Ill. 305, this question was very fully considered, and
after a review of the cases of an earlier day, when this
court had authority to review both the facts and the
law, we said (p. 314): "The rule deducible from the cases
in this State is, that in order to recover compensation
for inability to work at the plaintiff's ordinary and usual
employment or business, all that is necessary in the dec-
laration is the general averment of such inability caused
by the injury, and consequent loss and damage, and that
proof of his particular employment or business, and of
his ordinary wages or earnings therein, is admissible in
evidence under such general averment, but that when it
is sought to recover for loss of profits or earnings that
depend upon the performance of a special contract or en-
gagement, then these special and particular damages,
and the facts on which they are based, must be set out
in the declaration." The evidence did not go to any spe-
cial or particular damage growing out of the perform-
ance of any special contract or engagement which the
appellee claimed to have lost, but related solely to his
earning capacity as a carpenter and foreman. It did not
go into the question of his future or past profits and con-
tracts, and there was no error in its admission.

It is also assigned as error that the court made im-
proper remarks during the progress of the trial. This
assignment we cannot consider. An examination both
of the abstract and record discloses that no objection
or exception was taken at the time. In *Hall* v. *First Nat.
Bank of Emporia,* 133 Ill. 234, we said (p. 243): "Various
objections are made to the conduct of the trial judge. It

is enough tò say that no exceptions appear to have been taken in respect of such conduct. If the trial judge was guilty of impropriety, * * * the party objecting must by objection and exception properly preserve the same in the record if he desires to insist upon the same upon error or appeal." The same rule is recognized and laid down in 8 Encyclopedia of Pleading and Practice, 272.

Five instructions were given in behalf of appellee, and all are complained of. The first instruction told the jury that if plaintiff had proved his cause of action as alleged in his declaration he was entitled to a verdict. This instruction has several times been before this court and has been held to be unobjectionable. *Pennsylvania Co.* v. *Marshall*, 119 Ill. 399; *Chicago City Railway Co.* v. *Hastings*, 136 id. 251; *Ohio and Mississippi Railway Co.* v. *Porter*, 92 id. 437; *Race* v. *Oldridge*, 90 id. 250; *Mount Olive Coal Co.* v. *Rademacher*, 190 id. 538.

It is complained that the second instruction assumes that the appellant was the owner of the street railroads mentioned in the declaration. We do not think the instruction assumes anything, but tells the jury that if they believe, from the evidence, the matters stated in the instruction they shall find for the plaintiff But if the appellant's construction of the instruction were correct it would not, for that reason alone, be error. There was a *prima facie* showing by appellee that appellant owned and operated the railroad which injured appellee, and there was no evidence even tending to contradict it, and it is not error for the court to assume, in an instruction, that which is established on one side and not denied on the other.

Appellee's third instruction told the jury that if they found, from the evidence, he was a passenger of appellant and was struck and injured by the trolley-pole falling from appellant's car, and that appellee was using due care, then the burden was upon appellant to show that "it did all that human care, vigilance and foresight

could reasonably do, consistent with the character and mode of conveyance adopted, in the practical prosecution of its business, to prevent accident and injuries to passengers riding upon its cars or alighting therefrom and leaving the same." It is said this instruction was in conflict with other instructions given for appellant, namely, the sixth, which was that appellee must prove that appellant owned and operated the car in question; the twenty-third, which was that appellant should exercise such care "as human beings are capable of, and such care as is consistent with the practical operation of its trains;" and the thirty-fifth, which was that a party charging negligence must prove it. We see no conflict. The rule of care is the same in appellee's third and appellant's twenty-third instructions, and as there were several counts in the declaration, some of which were not upon the relation of carrier and passenger, appellant's thirty-fifth instruction was properly given; but when the relation of carrier and passenger was established, and the injury shown to have resulted from instruments and means wholly within appellant's control, then, *prima facie*, the negligence of appellant was proven. To establish that the relation of carrier and passenger existed, it would naturally follow that it must be shown in some manner, either by admission or evidence, that appellant owned and operated the car in question, and that appellee was a passenger by having ridden, by being in the car, or in some of the ways by which that relation may arise.

Appellee's fourth instruction is as to the measure of damages, and appellant complains that "it includes the element of prospective suffering and loss of health." The declaration, and at least two of the counts, allege permanent injury, and it was not error to instruct the jury to compensate appellee for not only what he had suffered, but what he would suffer.

It is said the fifth instruction given by the court *sua sponte* did not require the jury to find, from the evidence,

the matters submitted, and it required of appellant a higher degree of care than it should. The instruction submits a number of matters of fact to the jury and correctly states the rule applicable, and concludes with a sentence beginning, "what is the truth the jury must determine from the evidence only." We do not regard the instruction as bad from any point of view. It does not state fully the rule as to the care required of appellant, but that is cured by other instructions, and particularly by appellant's twenty-third, which deals with that sole question.

Appellant offered forty-two instructions, and thirty-one were given by the court. It complains that all were not given. We have examined them, and many of them were bad and should have been refused for that reason; others are covered by those given, and there was no error in refusing them. Appellant was treated more liberally than was its right in the matter of instructions, and the substantial errors were in its favor and at its request. The case required no such number and covered no such field, and we are satisfied appellant has suffered no injustice from the court in that regard.

Appellant has filed no brief in this case, but has filed an argument consisting of fifty-four pages, most of which is devoted to propositions which we are not authorized to consider in reviewing a case brought from the Appellate Court. For instance, it is urged that appellee is a malingerer and that he was feigning much of the ailments and injuries to which he testified, and that the verdict is excessive and that it is contrary to the evidence. All of these matters were disposed of before this case reached this court. Unless the court has the aid of counsel in pointing out the particular defects, and the law relating to the matter, from the viewpoint of counsel urging objections, it cannot be expected to go through both the record and the whole field of the law to ascertain if some rule may not be applied that will be beneficial to the

objector.   The rules of this court require a brief and permit an argument, and the tendency of counsel is to too frequently avail themselves of that which is permissive and ignore that which is required.

As we view this record the judgments of the trial and Appellate Courts should be sustained.   The judgment of the Appellate Court is affirmed.        *Judgment affirmed.*