(No. 17321.

MARY GARVEY, Defendant in Error, *vs.* THE CHICAGO RAILWAYS COMPANY, Plaintiff in Error.

*Opinion filed April 17, 1930.*

BROWN, FOX & BLUMBERG, (JOHN R. GUILLIAMS, CHARLES LEROY BROWN, FRANK L. KRIETE, and JOSEPH D. RYAN, of counsel,) for plaintiff in error.

STEBBINS, GAREY, L'AMOREAUX & HURTUBISE, (JAMES C. BYRNE, and W. B. O'BRIEN, of counsel,) for defendant in error.

Mr. COMMISSIONER EDMUNDS reported this opinion:

Mary Garvey, defendant in error, brought suit in the superior court of Cook county against the Chicago Railways Company and the Yellow Cab Company to recover

damages for personal injuries resulting from a collision between a street car and a taxicab. Trial by jury resulted in a verdict for $25,000 against both defendants. On motion for a new trial a *remittitur* of $9000 was entered, the suit was dismissed as to the Yellow Cab Company, leave was granted defendant in error to amend all papers, and judgment was rendered against the Chicago Railways Company, plaintiff in error, for $16,000. An appeal was prosecuted to the Appellate Court, where there was a further *remittitur* of $5000, and the judgment was affirmed for $11,000. The case is before this court on *certiorari*.

Defendant in error was an unmarried woman thirty-four years of age, who had worked for many years in department stores in Chicago. On the night of March 5, 1922, she and her sister, Anna Garvey, were passengers in a cab operated by the Yellow Cab Company enroute to their home at 829 Wellington avenue. The cab had been proceeding north on Halsted street, a north and south street, upon which plaintiff in error maintained two tracks. The weather was clear and cool and the rails were frosty. A street car operated by plaintiff in error was also coming north on Halsted street. The collision took place within the intersection of Halsted street and Oakdale avenue, an east and west street, which crosses Halsted street but not in a straight line, Oakdale avenue as it meets the east line of Halsted street being fifteen feet north of where it meets Halsted street on the west line. The testimony as to what occurred is highly conflicting. Defendant in error testified that Wellington avenue is one block north of Oakdale; that as the cab came up to Oakdale it turned west on Oakdale off the Halsted street car tracks, whereupon she knocked on the window and told the driver to go one block farther north; that the cab stopped for a second, and the driver then backed onto the north-bound Halsted street car track to right himself going north again; that he stopped probably a few seconds and then a terrible crash came.

Anna Garvey testified to substantially the same effect, and also that before the driver backed the cab out on Halsted street she did not see him look around, put out his hand or give a signal of any kind. Laddie Schubert, a witness for defendant in error, testified that he was driving a cab for the Town Cab Company and had turned into Halsted street from the east on Oakdale avenue and was proceeding south on the west side of Halsted street at the moment of the collision; that when he first saw the Yellow cab it was standing still; that he also saw the street car, moving slowly, close behind the Yellow cab; that just before the collision the Yellow cab started up, went about fifteen feet and suddenly stopped; that its direction was "straight north," and its driver just turned his wheel slightly as if he were going to make the turn on Oakdale; that the street car bumped into the rear end of the Yellow cab and shoved it slightly to the northwest, so that the fenders of the two cabs struck each other; that he did not see the Yellow cab driver put out his hand or give any signal. John C. Ludwig, a special police officer, who was riding on the front platform of the street car by the motorman, testified for defendant in error that he first noticed the Yellow cab about a block ahead of the street car; that he saw it stop about fifty feet in front of the street car, its rear end being about in the center of that part of Oakdale avenue that extends west of Halsted street; that it was right in the car tracks; that witness did not see any hand extended or warning sign by the driver of the cab; that when the street car struck the cab it moved the latter vehicle three or four feet and there was some glass broken in the cab window. Norman Hollensteiner, a university student, testified for defendant in error that he was standing on the southeast corner, on the east side of Halsted street and on the south side of Oakdale avenue; that he saw the Yellow cab standing still on the north-bound street car track and the street car was coming towards it; that when he saw the cab the street car

was about thirty feet from it; that the cab did not move before the crash. The street car motorman died before the trial. Harry Miller, driver of the Yellow cab, denied that he turned at Oakdale and drove west to the west side of Halsted street, then backed eastward onto the north-bound track. He testified that he stopped at Oakdale after having extended his arm as a signal to the street car which was following him and which was a block away; that he stood his cab on the track for about half a minute in order to give the right of way to the Town cab, which was entering Halsted street on the east from Oakdale; that the passengers in his cab said nothing to him whatever; that the street car knocked his cab six or eight feet. As to the presence of other vehicles along the street or curb at the time in question, the evidence showed that there were none and that there was no other traffic near.

Plaintiff in error introduced in evidence as part of its case ordinances of the city of Chicago providing that except in emergencies no vehicle should be permitted to stop in any street except near the curb, and that when it was desired to stop the driver should give an appropriate signal to be visible from the rear; that no vehicle should be allowed to remain upon any street so as to blockade or obstruct traffic thereon, and that any driver about to turn any vehicle at a corner should give a signal, visible from the rear, plainly indicating the direction of the proposed turn.

The immediate and undisputed injuries suffered by defendant in error were cuts in her neck from flying glass and some abrasions and bruises about her person. Her doctors testified to fractures and dislocations of certain spinal vertebræ. This diagnosis was disputed by other physicians. After the accident she was placed in a plaster cast extending from her head to her hips, which was left on for about three weeks. There was medical testimony to the effect that the injury resulted in a condition of neurosis, neurasthenic in type, which would remain permanent. She her-

self testified that after she left the hospital she remained in bed at home for three months before she was able to be up a few moments at a time; that not more than six times in the six months immediately preceding trial had she been out of bed before noon; that she could not make a quick action or stoop and raise her head without getting dizzy spells, which caused her to lose control of her body and made it necessary for her to go to bed for from one to five days; that she had not been able to earn a livelihood since the accident and suffered continual pain.

The verdict was entered on May 15, 1924. On May 21, 1924, on motion of defendant in error, the court ordered the defendants to file a written motion for new trial within eight days. Pursuant to this order each defendant filed such motion. There was a hearing of these motions on June 21, 1924, and the hearing not being completed on that date the matter was continued to June 28, 1924. On this latter date the court indicated that the motions of the respective defendants would be overruled upon the entering of a *remittitur* by defendant in error of $9000, and the matter was further continued to July 16, 1924. When it came up again on the latter date defendant in error remitted $9000 from the verdict. Plaintiff in error objected that the verdict was still excessive, but the court overruled this objection. Counsel for defendant in error then made a motion to dismiss the suit as to defendant the Yellow Cab Company. Thereupon counsel for plaintiff in error stated that he wanted to make a motion; that he asked permission "to make a showing as to the terms and consideration of the dismissal." Counsel for defendant in error retorted, "We object." Counsel for plaintiff in error then stated to the court that counsel for defendant in error had settled with the Yellow Cab Company, had made arrangements for paying the money which had been paid to defendant in error, and had had defendant in error execute and deliver whatever instrument had passed suggesting the considera-

tion for dismissal of the Yellow Cab Company. Counsel for defendant in error retorted that there was "no consideration for the dismissal," and that counsel for plaintiff in error knew that "any arrangement with the Yellow Cab Company is purely on a covenant not to sue and has nothing to do with the verdict in any way." Counsel for plaintiff in error stated that he asked that the "so-called covenant, or copy of it," be embodied in the record. Counsel for defendant in error objected that it had no place in the record, and the court stated that it was "unable to pass on that in this particular case." Counsel for plaintiff in error then stated to the court that he offered to show, before the court had ruled on the new trial motion, that the Yellow Cab Company, "as consideration for the action just taken by counsel here, has paid to the plaintiff in this case the sum of $5000, and that plaintiff has executed an instrument in writing and delivered the same to them." Counsel for defendant in error asked if it was the contention that any part of this amount was in settlement of this case, and counsel for plaintiff in error replied, "Yes." Counsel for defendant in error further asked if it was counsel's contention "as attorney for Yellow Cab Company." Counsel for plaintiff in error replied, "No, I am acting for the Chicago Railways Company." The court asked counsel to proceed, whereupon counsel for plaintiff in error stated, "I am offering to show just what I have indicated here." Counsel for defendant in error retorted, "We object." Counsel for plaintiff in error then stated as follows: "I offer to show further that counsel has given to the defendant Yellow Cab Company an instrument in writing signed by his client which he calls a covenant, but it is in satisfaction of the verdict in this case. And I offer to make that proof, and when the proof is made I will ask that the court set aside the verdict as to the defendant street railway company and dismiss the cause as to the defendant street railway company on the ground that the action of the plaintiff

amounts to a release and satisfaction of the entire cause of action as to both defendants." Counsel for defendant in error retorted, "All such statements we object to." The court then said, "Motion overruled." Counsel for plaintiff in error further stated: "So that there may be no question—the court is denying my offer to prove a settlement and satisfaction between plaintiff and Yellow Cab Company?" The court said, "Yes," and that it was denying the motion of counsel for plaintiff in error to set aside the verdict and dismiss as to the street car company.

Plaintiff in error contends that the trial court erred in denying its motion thus made for leave to show that the Yellow Cab Company had paid money to defendant in error in consideration for dismissal of the suit as to it, and that this was evidenced by a written instrument executed by defendant in error and delivered to the Yellow Cab Company. Counsel for defendant in error insist that no point was preserved by plaintiff in error in this connection because no witness was called to prove the alleged facts as stated by counsel for plaintiff in error and because the document referred to was not incorporated in the bill of exceptions. In support of this argument that the offer was not sufficient, counsel cite *Chicago City Railway Co.* v. *Carroll,* 206 Ill. 318. In that case plaintiff was allowed to testify relative to the name appearing on the company's cars. After plaintiff's case was closed, counsel for defendant said, "We desire to offer evidence, your honor, on the question of inspection of the cars, and so forth." The court replied: "Very well; I won't receive any evidence except as to the ownership of this line at this stage." Error was assigned on the refusal of the court to permit counsel to make his suggested showing. This court commented upon the fact that counsel put no witness on the stand and asked no question, and that the record showed nothing but "a mere conversation or talk had between counsel for appellant and the court," and stated that such procedure did not amount to

an offer of evidence. However, it was further said: "It was not stated to the court that appellant did inspect the cars or could prove that the cars had been regularly inspected or recently inspected, or that the inspection that was made was an examination of the trolley-pole or its attachments, and to now hold that the case should be reversed upon the mere statement of counsel that he desired to offer evidence upon the question of the 'inspection of the cars, and so forth,' would, as we think, be setting a dangerous precedent, and one that would tend to irregularity in such matters." That the broad generality of counsel's offer and his failure to state with any particularity what he proposed to show were there strongly in the mind of this court is clearly evidenced by this latter statement. It is, of course, well settled that a general offer made in the course of trial to prove a mere conclusion presents no question for review on objections and exceptions. (*Martin* v. *Hertz*, 224 Ill. 84; *Goodrich* v. *City of Chicago*, 218 id. 18.) On the other hand, it has been held that a party is not barred from assigning error on the exclusion of evidence for the mere reason that the record does not show that a witness was actually put on the stand or that a witness was present who could have been called for that purpose. *Scotland County* v. *Hill*, 112 U. S. 183.

Even though the implications of the *Carroll case* be held for the moment to extend as far as counsel for defendant in error claim, it must be borne in mind that the offer of counsel in that case was in the regular course of a formal trial. Here we are dealing with an entirely different situation. The trial had been concluded. Motions for a new trial had been filed. Counsel were in court to argue these motions. Occasion for plaintiff in error to make its offer arose in the course of argument before the court after counsel for defendant in error moved to dismiss the suit as to the Yellow Cab Company. It is clear that the situation justifying a showing of such evidence as might show

a reduction in the amount of damages to which plaintiff in error could be held to respond, or which might establish the discharge from liability of plaintiff in error, had just come to a head. Counsel for plaintiff in error at once asked leave to make a showing as to the terms of the dismissal, and supported his motion by making it clear that he proposed to prove certain specific transactions between defendant in error and the Yellow Cab Company in the way of payment of a definite sum of money by the Yellow Cab Company to defendant in error as consideration for the dismissal of the suit as to the Yellow Cab Company and the execution and delivery by defendant in error to the Yellow Cab Company of a written instrument. Counsel for defendant in error did not then raise the objection that counsel for plaintiff in error was not making a *bona fide* offer. He did not object on the ground that counsel for plaintiff in error was not making an offer sufficiently specific or formal. He objected categorically to the motion of plaintiff in error to make a showing of the terms of dismissal. He did not deny the existence of a written instrument but retorted that the instrument alluded to did not have the legal effect that counsel for plaintiff in error claimed for it and that it had no place in the record, and he entered still further categorical objections to the succeeding statements of counsel for plaintiff in error requesting leave to make the indicated proof and describing what it would show. The language of counsel for defendant in error then used indicates that he understood exactly what plaintiff in error proposed to show, that he immediately proceeded to take issue on the question of what the writing and facts offered to be proved would show, and that along with his categorical objection to the making of the proof offered by plaintiff in error he argued against its import as having any unfavorable bearing on his case. In *Moore v. Coates,* 35 Ohio St. 177, there was a motion for a new trial on the ground of newly discovered evidence. The trial

court overruled it. The Supreme Court of Ohio said: "It is wholly immaterial whether the affidavits did or did not make a case for a new trial. The error consists not in weighing but in excluding the whole evidence without regard to its weight. The court refused to pass any judgment on the sufficiency of the affidavits, while the record shows they contained material evidence." The terms of the offer made by counsel for plaintiff in error in the present case were sufficiently specific in their nature to enable the court to see that the proof contemplated by the offer, if made, would have a direct bearing either upon the amount of damages recoverable against plaintiff in error, (*City of Chicago* v. *Babcock,* 143 Ill. 358; *O'Neill* v. *National Oil Co.* 231 Mass. 20, 120 N. E. 107;) or upon the question of the further liability of plaintiff in error. (*Wallner* v. *Chicago Traction Co.* 245 Ill. 148.) Under all these circumstances the trial court should have permitted the proffered showing to be made, and it committed reversible error in flatly overruling the motion of counsel for plaintiff in error under which he offered to make it. *People* v. *Ortiz,* 320 Ill. 205.

Plaintiff in error also contends that the trial court erred in giving instruction 35, which was as follows:

"The court instructs the jury that the defendant, the Yellow Cab Company, had the right to operate the taxicab in question on the north-bound street car track on Halsted street, and the jury are not to infer that the Yellow Cab Company was negligent from the mere fact that the taxicab was in the north-bound track."

As a statement of an abstraction the principle thus expressed is perhaps not open to objection. It is true that under certain circumstances the driver of a vehicle has the right to operate it over space occupied by a street car track on a public street. However, it is equally true that to so operate it under some circumstances may amount to negligence. One of the determining questions of fact in this

case directly involved the issue as to whether the driver of the Yellow cab was negligent in having his vehicle on the street car track at the instant of collision. There was abundant testimony from which the jury could find that the driver was negligent in so having it there. If, for example, the jury believed the testimony of defendant in error and her sister to the effect that the cab turned west at Oakdale avenue and was driven off the tracks, then was reversed and driven back onto the north-bound track, and if they believed that this was done when the street car was so close as to make a collision inevitable and unavoidable although the motorman exercised due care, then they might properly have found the Yellow Cab Company guilty and · plaintiff in error not guilty. The same result might reasonably have been reached by the jury had they believed other testimony offered in behalf of defendant in error to the effect that the cab did not turn off the tracks but stopped, then started up and stopped again within a few feet, and if they further believed that this occurred when the street car was so close that the motorman in the exercise of due care could not have avoided the collision. It was for the jury to say whether under all the circumstances shown by the evidence the operation of the cab at the time of collision amounted to negligence. The instruction necessarily related to the time and place of the accident, but it was without any apparent reference to the evidence presented. It merely stated an abstract principle, sharply emphasizing the general right of the cab to be on the street car track—a consideration which was not in this case directly in issue at all.

It is a settled principle that an instruction should not draw the attention of the jury to particular facts and that it is improper to inject an argument into an instruction. Where an instruction selects one item of evidence, or one fact disclosed by the evidence, and states that a certain conclusion does not follow as a matter of law from that fact, it is calculated to mislead and confuse the jury. (*Drainage*

*Comrs.* v. *Illinois Central Railroad Co.* 158 Ill. 353; *West Chicago Street Railroad Co.* v. *Petters,* 196 id. 298; *Illinois Central Railroad Co.* v. *O'Keefe,* 154 id. 508; *Pienta* v. *Chicago City Railway Co.* 284 id. 246.) The principles thus clearly laid down in these authorities constrain us to say that in the light of the facts of the present record the giving of instruction 35 was reversible error.

Counsel for defendant in error contend that if any error was involved in giving instruction 35 it was cured by certain instructions given at the request of plaintiff in error, and which, in substance, told the jury that plaintiff in error could not be held liable unless it was guilty of some negligent act or omission after it had knowledge, actual or constructive, of that which was to be guarded against. Under the evidence presented there were before the jury issues of relative rights and responsibilities. As above indicated, instruction 35 unduly emphasized the rights of one party defendant, and this vice cannot be held to have been cured by other instructions which only set forth the responsibility of plaintiff in error, the other defendant.

Counsel for defendant in error further contend that inasmuch as the jury found the Yellow Cab Company guilty, as well as plaintiff in error, it follows that they were not misled by instruction 35. However, the jury may have proceeded upon the theory that the cab was rightfully where it was but that the driver was negligent in other respects, and found the Yellow Cab Company guilty accordingly. Under the evidence in this record it would be going too far to hold that the conclusion contended for is justified.

It is suggested that plaintiff in error is estopped to complain of instruction 35 because it did not at the trial tender any instruction to offset instruction 35, and thereby endeavor to see to it that the jury were properly instructed. We know of no rule of law which precludes a party from raising an objection to an instruction simply because he did not submit an instruction calculated to offset it, nor does

defendant in error cite any authority in support of such suggestion.

It is urged by counsel for defendant in error that the trial judge had the attorneys for all sides submit copies of their instructions in advance so that they could be examined; that instruction 35 was given at the request of the Yellow Cab Company, a co-defendant; that counsel for plaintiff in error made no objection at the time to it, and it is contended that it was thereafter too late for plaintiff in error to object to it. This contention is not well taken. The record shows that a general objection to all instructions other than those offered by plaintiff in error was made at the conference in chambers where the instructions were discussed. The record shows also that exception was taken to the giving of instruction 35. Even though no objection were made at the conference in chambers or before the instructions were read to the jury, the exception of plaintiff in error, coming before judgment, was in ample time. (Cahill's Stat. 1929, chap. 110, par. 74; *Collins Ice Cream Co. v. Stephens*, 189 Ill. 200.) Nor is plaintiff in error estopped to object to the instruction because it was not requested by defendant in error but by a co-defendant. *MacDonald v. Chicago Railways Co.* 286 Ill. 239.

Plaintiff in error also complains of instruction 15, which commenced with the words: "In determining the amount of damages, the plaintiff is entitled to recover in this case, if any, you have a right to take into consideration all of the facts and circumstances you believe are proven by the evidence before you." An instruction which does not require the assessment of damages to be based upon evidence as to damages for which the law allows recovery is improper. (*Illinois Central Railroad Co. v. Johnson*, 221 Ill. 42.) An instruction embodying the above statement is particularly objectionable where there is more than one party defendant. However, instruction 15 did not stop with the above words but went on to outline the various elements of

injury which may properly be taken into consideration, and the broad generalization of the first statement was, in effect, limited thereby. While the giving of instruction 15 might not in itself call for reversal of this case, inasmuch as there must be reversal on other grounds the error should not be repeated on a new trial.

Plaintiff in error further contends that error was committed in permitting the introduction in evidence of testimony based upon certain X-ray pictures. The pictures in question were taken by Dr. I. S. Trostler, who testified that he was a physician specializing in radiology; that he had been in X-ray work since a few months after X-rays were discovered and had worked continuously at them in Chicago as an expert and specialist since 1907; that he had taken X-ray pictures of all parts of the body and developed and finished them; that he took pictures of the neck, spine and skull of defendant in error on March 6, 1922, at the Illinois Masonic Hospital; that the X-ray which was taken of the cervical region of the spine was taken with the patient lying on her back and the X-ray film was placed under her neck; that the stand was so adjusted that the X-ray tube was over the neck when the plate was made; that then the patient was turned on her side, the plate was placed under her neck and the tube directly over the neck on the opposite side and the other exposure was made; that this was the proper way to take an X-ray picture of the cervical vertebræ; that he developed the pictures and after they were dry identified them as the ones he had taken of defendant in error and examined them. He further testified that the machine used was "not in very good working order;" that it was an old machine that had seen its best days, being used for many years, but it was used for "seven or eight or nine months, about a year," afterwards; that he did not use a fluoroscope. After some argument in connection with the objection to the evidence Dr. Trostler was asked: "Are you able, doctor, from your experience as an X-ray expert,

to state whether or not that picture which you took and developed, examined and afterwards filed, was a correct representation of the cervical spine of this woman?" Witness answered, "I am able to state." He was then asked, "Will you state?" He answered, "It was a correct representation." He then testified from a written record made by him at the time as to what was shown by the pictures, which had been lost before the trial.

The point made by plaintiff in error goes to the propriety of the pictures themselves as evidence rather than to the failure to produce the originals. The case of *Stevens* v. *Illinois Central Railroad Co.* 306 Ill. 370, is relied upon to establish that what the pictures showed was improperly admitted. That case does not purport to lay down any exclusive detailed rule to govern the circumstances upon which the admissibility of X-ray pictures depends. It suggests certain methods, and in connection with one of these it makes reference to a machine known to be "in good working condition." Unquestionably, X-ray pictures taken under the conditions specifically suggested in the *Stevens case* would be properly admissible, but that it is not absolutely essential that all these particular conditions be met is made clear by a definite statement that they are not exclusive. The point which is stressed is that there must be competent evidence offered establishing that the picture correctly portrays the condition which it purports to represent. As this court said in *Kavale* v. *Morton Salt Co.* 329 Ill. 445: "Skiagraphs must be identified as true representations of their subject, as is the rule with reference to photographs by a camera, and they cannot be received in evidence until proper proof of their correctness and accuracy is produced." In the absence of other convincing proof tending to establish accuracy it would certainly be improper to admit pictures shown to have been taken on a machine not in "good working condition," but no absolute rule has been expressed making pictures taken on such a machine inadmissible, re-

gardless of other testimony and considerations. Under all the circumstances shown we do not feel warranted in saying that error was committed in admitting this evidence.

For the other errors indicated, however, the judgments of the Appellate and the superior courts are reversed and the cause is remanded to the superior court of Cook county.

Per CURIAM: The foregoing opinion reported by Mr. Commissioner Edmunds is hereby adopted as the opinion of the court, and judgment is entered in accordance therewith.

*Reversed and remanded.*