(No. 39523.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* ROBERT DeMARY, Plaintiff in Error.

*Opinion filed March 29, 1967.*

WARD, J., took no part.

SCHAEFER, J., dissenting.

Byron H. Weis, of Chicago, appointed by the court, for plaintiff in error.

William G. Clark, Attorney General, of Springfield, and John J. Stamos, State's Attorney, of Chicago, (Fred G. Leach, Assistant Attorney General, and Elmer C. Kissane and Eldridge Hershey, Assistant State's Attorneys, of counsel,) for the People.

Mr. Justice Underwood delivered the opinion of the court:

Robert DeMary was convicted of burglary in 1963 and sentenced to 10-15 years imprisonment. No appeal therefrom was taken, but a post-conviction petition was subsequently filed *pro se* alleging numerous trial errors claimed to be of constitutional dimensions. This writ of error is to review an order allowing the State's motion to dismiss that petition. Incorporated by leave of court in the record now before us is the common-law record and report of the proceedings at the original trial.

Three grounds for reversal are here urged: (1) the trial court's failure to appoint competent counsel; (2) the court's refusal to order a behavior clinic examination; (3) the denial of a motion for continuance made immediately preceding trial.

The record indicates the apartment of Frank Miyagawa was broken into October 10, 1961, and numerous items, including a portable television set and saxophone, were taken. Clifton Sloan, a guard at the House of Correction who lived in the burglarized building, testified that he and Mr. and Mrs. John Priess were returning from a corner drug store where they had gone for a cup of coffee about 11:00 A.M. As they approached the building in which Sloan lived, they

observed a taxi blocking the "utility way" or alley and the witness spoke to the cab driver about blocking the entrance. As he did so he noticed another man and a television set, among other things, in the rear seat. The individual seated in the cab apparently was Frank Wilson, defendant's brother-in-law, and he told the witness he was "helping a friend move." The witness then saw defendant coming down the alley with a saxophone case under one arm and carrying other items, including a package out of which a crowbar was visible, under the other arm. Sloan further testified he recognized defendant, whom he had known since childhood, took the crowbar from him, told the Priesses to get the cab number and went into his apartment and called the police. When he returned the cab and men had left.

Defendant was arrested on October 23, identified by Sloan, gave a detailed statement relating to the burglary, the sale of the stolen property by Frank Wilson, and division of the proceeds. Apparently defendant was then released on bond. A burglary indictment was returned the following June, and the case stricken in July with leave to reinstate. The State says this was because defendant had "jumped bond", and a bond forfeiture order was entered prior to the case being stricken. Defendant maintains he was in a tuberculosis sanatorium following his release on bond and that he found out in March, 1963, for the first time, that an indictment was pending and the police seeking him, and that he then surrendered. In any event, the burglary case was reinstated on March 6, 1963.

On the last-mentioned date defendant appeared in court, was asked whether he had a lawyer or the money to hire one and stated he would "have to find out." The court then appointed the public defender, reading of the indictment was waived, a plea of not guilty entered, and the case assigned to a trial judge. The cause was thereafter continued several times, the orders reciting the presence of defendant and his counsel on those occasions. On April 15, defendant's

motion for a pretrial investigation by the probation department was allowed. The cause was again continued several times to June 17 when defendant filed a motion to suppress the statement given by him. On this and several earlier dates both parties had indicated their readiness for trial. On June 17 the case was held on call for trial the next morning.

On the morning of the 18th the public defender indicated defendant's readiness for trial and shortly thereafter requested a five-minute recess to "check" something defendant had just told counsel. Thereafter defense counsel stated defendant had just informed her of two witnesses about whom she had not known until then, and requested a continuance, indicating an inability to adequately cross-examine the State's witnesses until she had talked to the witnesses about whom she had just learned. The assistant State's Attorney stated his willingness to have the prosecution witnesses held over for additional cross-examination if defense counsel desired, but opposed further continuances, in part because of inconvenience to the witnesses for the State. The trial judge pointed out that defendant had been answering "ready for trial" whenever the case had been called since April 25, and, after some discussion, ruled "The case will go to trial. We will give you time to get your witnesses." Defendant then announced his refusal to proceed to trial without his witnesses, and asked the court to appoint competent counsel for him other than the public defender. The judge, indicating there had been no showing of incompetency, denied the request. Defendant then moved for a change of venue on grounds of the prejudice of the judge. This was denied on the ground that it came too late and was presented only for purposes of delay. Defendant then announced he considered himself unrepresented, that proceeding with the trial would violate his constitutional rights and be against his wishes, reiterating this objection at several points during the colloquy between the judge, lawyers and defendant. Defense counsel then requested a

behavior clinic examination of defendant in view of his unwillingness to co-operate with her. Defendant indicated his willingness to proceed to trial if competent counsel was appointed, the judge stated he saw no indications of mental instability and denied the request for examination. A jury was then selected and the case proceeded to trial with the defendant periodically restating his contention that he did not have competent counsel and was being denied his constitutional rights. The request for a behavior clinic examination was subsequently renewed by defense counsel and again denied.

The only defense presented consisted of the testimony of defendant's wife and her brother who stated that Clifton Sloan was brought to defendant's apartment by Frank Wilson (another of the wife's brothers) on June 9 preceding the trial. This was denied by Sloan who testified he did not know defendant's wife and was not at their apartment on June 9. The gist of this testimony was that Sloan indicated to defendant's wife that he could help defendant in exchange for money. It is implied that this "help" would consist of Clifton Sloan's refusal to testify for the State. Defense counsel requested a continuance to locate Frank Wilson and a dispute ensued, the State maintaining he had been in the courtroom that morning and defendant denying this. The court denied the continuance after defendant's offer of proof by Frank Wilson that Sloan had been taken to defendant's wife's apartment by Wilson on June 9 and there introduced to the wife, and that Wilson thereafter waited outside while Sloan and defendant's wife conversed.

The argument as to the incompetency of counsel must fail. While there are repeated claims of incompetency in the *pro se* post-conviction petition, they are intertwined with the implication that defendant had an absolute right to counsel other than the public defender. Section 4 of "AN ACT in relation to the office of Public Defender" (Ill. Rev. Stat. 1963, chap. 34, par. 5604) then provided for appoint-

ment of nonpublic defender counsel when requested by defendant. We do not, however, consider this to give the defendant either a constitutional right to counsel other than the public defender or an unqualified right to substitute appointed private counsel for the public defender at any stage of his trial. (*People* v. *Ashley,* 34 Ill.2d 402, 409.) We find no abuse of discretion of constitutional or other dimensions in the refusal of the trial judge to allow defendant's motion for other counsel where such motion is first presented on the morning of trial and the prior appointment of the public defender was known to and acquiesced in by defendant for nearly 3½ months prior to trial. Particularly is this true where, as in this case, no actual incompetency is shown. *Ashley; People* v. *Gray,* 33 Ill.2d 349, 353-5; *People* v. *Palmer,* 31 Ill.2d 58-65-6.

There are in the petition numerous complaints of the public defender's inattention to defendant's case, and it is claimed that no attorney from that office conferred with defendant at the county jail prior to trial. It is not clearly established by the record that such was the fact, (the jail visitation card shows the name of a visitor who is not otherwise identified) but even if true, there is no showing that investigators from that office did not confer with defendant during this pretrial period or that the occasions when defendant saw counsel in court were insufficient. More importantly, there is nothing in the petition establishing the manner in which defendant has been prejudiced. It is neither alleged nor established that named witnesses were available, could have been located, or how their testimony would have been helpful to defendant. (See *Ashley,* pp. 409-413.) In short, while we do not intend this holding to be construed as approving the practice, if it exists, of failure to consult indigent prisoners with reasonable frequency, there is no showing here which would justify a finding of incompetency on the part of defense counsel. The petition simply does not state any fact giving reason to believe that more

time, consultation or effort by counsel would have produced any different result in this trial.

There is no merit to the implied argument that failure to order defendant examined by the Behavior Clinic was a denial of due process. Defendant did frequently indicate his desire for other counsel, his unwillingness to proceed with trial, and his belief that his constitutional rights were being violated, but his post-conviction petition specifically disclaims any mental abnormality. We have repeatedly outlined the duties of the trial judge whenever facts giving rise to a *bona fide* doubt as to defendant's sanity are brought to the court's attention, either from personal observation or from the suggestion of counsel (*People* v. *Lego,* 32 Ill.2d 76, 78; *People* v. *Harper,* 31 Ill.2d 51), but it cannot be said the circumstances here were such as to cause doubt as to defendant's ability to co-operate with counsel, and the trial judge committed no abuse of discretion in denying the request for examination. *Lego; Harper; People* v. *Cleggett,* 22 Ill.2d 471.

Finally, we find no error in the denial of the continuance if this could be considered a constitutional question in the context in which it here arises. As we understand the record, only one witness, Frank Wilson, of those desired by defendant failed to testify. He had neither been present during nor overheard the alleged conversation between Sloan and defendant's wife. Such testimony as he might have given, as disclosed by the offer of proof, was merely cumulative in nature to that of his brother and sister, and could scarcely be thought to affect the result here in view of the clear proof of guilt.

We find no error in the trial court's dismissal of the petition, and the judgment of the circuit court of Cook County is affirmed.

*Judgment affirmed.*

Mr. JUSTICE WARD took no part in the consideration or decision of this case.

Mr. JUSTICE SCHAEFER, dissenting:

In my opinion the petitioner was entitled to a hearing to determine the merits of his claim that his appointed counsel did not competently represent him. In support of this claim the petitioner attached a copy of his jail visitation card which shows that he had one visitor prior to his trial. The suggestion that this visitor, named but not otherwise identified, was in some way connected with the public defender's office originates with this court, not with the attorneys for the parties who know the facts. The trial assistant stated that the public defender's office had no confidential questionnaire from the petitioner. The significance of this statement is obvious in view of the procedure followed by the public defender's office. (*People* v. *Morris,* 3 Ill.2d 437, 450, 451.) No attempt was made at any time to dispute the charge implicit in the petitioner's explanation that he concluded the public defender was incompetent "when I only get a chance to see her two minutes before trial." These facts raise questions which should have been resolved by an evidentiary hearing.

The opinion states that "there is nothing in the petition establishing the manner in which defendant has been prejudiced." But the assistant public defender who tried the case stated that she would not be able to cross-examine the prosecution's witnesses until she had an opportunity to talk to the witnesses of whom she learned only when she talked to the defendant after she had answered ready for trial.

The opinion of the court continues, "It is neither alleged nor established that named witnesses were available, could have been located, or how their testimony would be helpful to defendant." Frank Wilson, a co-defendant who had been tried and acquitted before the defendant's trial commenced, was not called as a witness. At the trial the prosecution resisted a continuance to secure Wilson's attendance on the ground that he had been present in the courtroom during the defendant's trial. The defendant denied this. Attached

to the post-conviction petition is the affidavit of Frank Wilson which states that he was in Cook County at the time of the trial, had not been present in the courtroom during the trial of the defendant's case, or during the month in which that case was tried, that he had not been served with a subpoena to appear, and that if he had been served with a subpoena he would have appeared and testified for the defendant.

The opinion considers that Wilson's testimony was unimportant because he "had neither been present during nor overheard the alleged conversation between Sloan and defendant's wife. Such testimony as he might have given, as disclosed by the offer of proof, was merely cumulative in nature to that of his brother and sister, and could scarcely be thought to affect the result here in view of the clear proof of guilt." But the "clear proof of guilt" to which the opinion refers is largely the testimony of Sloan, who was the only occurrence witness for the prosecution. The fact that Wilson was not present during the alleged conversation between Sloan and the defendant's wife is of no significance, because Sloan denied that he had ever visited the defendant's wife. Wilson's testimony that he had taken Sloan to see the defendant's wife was, in my opinion, highly important.

Whether the "offer of proof" by the defendant's attorney was regarded by the trial judge as of any significance, (see *Chicago City Railway Co.* v. *Carroll,* 206 Ill. 318, 328-9; *cf. Garvey* v. *Chicago Railways Co.,* 339 Ill. 276, 282-3.), cannot be determined from the record. He made no ruling concerning it. The defendant's appointed attorney failed to request the prosecution to enter into the statutory stipulation as to what the testimony of the absent Wilson would be. Ill. Rev. Stat. 1965, chap. 38, par. 114—4.

Serious questions of adequate representation are also presented by the fact that the public defender was appointed to represent petitioner at the post-conviction hearing even

though he had requested other counsel. In a recent case the court stated: "Petitioner's contention that he should have counsel other than the public defender was not entirely without merit since it was, in part, inadequate trial representation by that official of which defendant was complaining * * *." (*People* v. *Ashley*, 34 Ill.2d 402, 409.) In the present case the public defender did argue that the trial counsel from the public defender's office was incompetent for want of preparation, although he based his argument upon matter set out in the petition, which he did not seek to amend, and did not undertake an independent investigation. But the fact that the argument was made does not avoid the problem. Even though the public defender's office is staffed with competent and dedicated lawyers it is unfair both to them and to their clients to require a public defender to attempt to show that a fellow public defender was incompetent. I would afford the petitioner an evidentiary hearing and provide other counsel.